Joe Lonnie BYRGE, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Aug. 29, 1978.

Certiorari Denied by Supreme Court
Dec. 4, 1978.

Donald B. Roe, Oak Ridge, for appellant.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, James B. Scott, Dist. Atty. Gen., Michael Lawson, Asst. Dist. Atty. Gen., Clinton, for appellee.

## OPINION

DUNCAN, Judge.

This is an appeal from a judgment rendered by the Anderson County Criminal Court approving a jury verdict finding the appellant, Joe Lonnie Byrge, guilty of passing a forged instrument and fixing his punishment at not less than 3 nor more than 6 years in the state penitentiary.

In this appeal, the appellant has assigned errors challenging the evidence, the admission of fingerprint evidence, the questioning of a witness by a juror, and the admission of testimony regarding his identity. We find no error.

Appellant's first assignment of error, which alleges that the verdict is contrary to the law and the evidence, requires that we review the evidence.

Evidence presented at trial showed that a corporate payroll check drawn on the account of Wright Mining Company in the amount of $164.58, dated September 8, 1977, and signed by Tim Pratt and Charles Rutherford as officers of the corporation, had been stolen from the payee, Jerry Gouge. Gouge testified that he had received the check from Pratt, placed it in the glove compartment of his truck, and then had gone to work on an eight hour shift at the coal mine. He discovered that the check was missing after his work shift. He further testified that he had not endorsed the check and that the signature "Jerry Goyge," purporting to be his, was not his signature. Gouge also testified that his name was misspelled in the signature, which is apparent even from a brief examination of the check.

Donnie Braden, an employee at the same mine, testified that he too had received a payroll check on September 8, 1977, and that it also had been stolen, along with his wallet and drivers license, while he was working. Braden further testified that the signature "Donnie Braden," purporting to be his, had not been placed on the check by him.

Deborah Barnes, a cashier at the victimized store, testified that the check shown her in court had been initialed by her on the day that a man claiming to be Donnie Braden had presented it to her for payment. She identified the appellant as that man. Ms. Barnes further testified that the appellant had not represented himself to be the payee, Jerry Gouge; instead, he had stated that he was a friend, Donnie Braden, and was cashing the check for Jerry Gouge. She also testified that the appellant had presented identification purporting to be Jerry Gouge's, and had claimed that he had no identification. Ms. Barnes was uncertain whether the appellant signed the name "Donnie Braden" in her presence, but was sure that he represented himself to be Donnie Braden.

Kenneth Caldwell, a criminal investigator for the district attorney's office, testified that he had received the check in question from the store manager and kept it locked in his file until he sent it to the F.B.I. laboratory in Washington, D.C., for fingerprint analysis. He further testified that the check could not have been handled by the appellant at any time after he had received it from the store manager.

Martin McCoy, an employee of the sheriff's office, testified that he had processed the appellant's fingerprints in 1973, and had sent an inked fingerprint card to the F.B.I.

laboratory in Washington, D.C. at that time.

An F.B.I. fingerprint expert, Richard Willett, testified that he ran several chemical tests for fingerprints on the check sent to him by Mr. Caldwell. He found two latent fingerprints on the check and compared those with the appellant's inked fingerprint card on file with the F.B.I. Mr. Willett further testified that the fingerprints taken from the check matched the right index and middle finger inked prints on the fingerprint card bearing the appellant's name. The total number of comparison points was 18, although Willett had listed only 12 on the large photo shown to the jury to help illustrate his testimony.

■ The evidence presented in this case is more than sufficient to support the appellant's conviction for passing a forged instrument. The check had been stolen; the endorsements on the back of the check were shown to be false; the appellant was identified as the person who had cashed the check; he had represented himself to be Donnie Braden and claimed he was cashing the check for his friend, Jerry Gouge; and he had presented identification purporting to be that of Jerry Gouge. Clearly, the State proved beyond a reasonable doubt all of the elements necessary for a conviction for passing a forged instrument. *See Clancy v. State,* 521 S.W.2d 780 (Tenn.1975).

■ Under the first assignment, the appellant also complains about what he characterizes as the "presumption of guilt" arising from the possession of a forged instrument. He claims that the presumption of innocence afforded all defendants in a criminal case is overruled by the presumption arising from the possession of a forged instrument. We cannot agree with this contention. The use of *inferences* of guilty knowledge, in the absence of unexplained possession, in cases involving possession of forged instruments and other offenses is well established and constitutionally permissible. *See Keebler v. State,* 3 Tenn.Cr. App. 447, 463 S.W.2d 151 (1970); *see also Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Bush v.*

*State,* 541 S.W.2d 391 (Tenn.1976); *Armes v. State,* 540 S.W.2d 279 (Tenn.Cr.App. 1976). This assignment is overruled.

Appellant's second assignment of error challenges the admission of fingerprint evidence. Under this assignment, the appellant argues, citing *Crouch v. State,* 498 S.W.2d 97 (Tenn.1973), that the State did not show when, where, or how his fingerprints could have been placed on the check.

■ We are dealing with a set of facts in the present case entirely different from those facts present in the *Crouch* case. In that case, the female defendant was convicted of robbery based solely on evidence that her thumbprint was on a note which had been presented by the male robber to the victim. There was no evidence to place the female at the scene of the crime, nor any other evidence to implicate her in the robbery. The Supreme Court held that that thumbprint evidence under those facts was insufficient to support her conviction. In the present case, the appellant's fingerprints were but one piece of evidence linking him to this crime. He was identified as the person who passed the check, and obviously the evidence clearly indicates that he had no opportunity to impress his fingerprints on the check at any time other than in the interval between the check's theft and when it was presented for payment.

The court did not err in allowing this fingerprint evidence to be admitted. We overrule this assignment.

Under his third assignment of error, the appellant questions the propriety of a juror addressing a question to Richard Willett, the F.B.I. expert witness, during the recross examination of that witness. The juror asked, "How many points of comparison do you need to be certain of an individual's fingerprints?" The witness replied, "There is no set number. The fewest number that has ever been testified (sic) in the F.B.I. is seven. . . ." Prior to this question, the witness had testified extensively about the reasons for his conclusion that the latent prints on the check matched the inked prints on the appellant's fingerprint card.

There was no objection to the juror's question nor did counsel ask that the jury be excused in order to take up this matter with the trial court.

■ The appellant cites *Branch v. State,* 4 Tenn.Cr.App. 164, 469 S.W.2d 533 (1969), for the proposition that "permitt[ing] jurors to ask questions is (a perilous practice which trial courts should scrupulously avoid)." We do not disagree with the general tenor of this dictum found in the *Branch* case, but we venture further to say that each case must be judged on its own facts in determining whether error has been committed. In the present case, we find no error. Here the juror asked the question without warning or prior approval of the trial court and asked only one question. Clearly, this situation was unlike that which developed in *Branch v. State, supra,* where several jurors, with the court's permission, questioned the defendant, Branch, while he was on the stand testifying in his own behalf. There was no comparable situation in this case. Also, we would point out that the *Branch* case was reversed for reasons other than the complaint about the jurors' questioning of the defendant.

■ Even if any error could be said to be present, it is harmless within the context of the facts and circumstances of the present case. T.C.A. § 27–117. We overrule this assignment.

Appellant's last assignment questions the reliability of the store cashier's identification of him as the person who cashed the check. He bases this assignment on con-flicting statements made by the witness, Deborah Barnes, at the preliminary hearing and in her testimony at trial. At the preliminary hearing she had testified that she was "pretty sure it is this guy," while at the trial she was more positive in her identification of the appellant as the perpetrator. The appellant also questions contradictions in that portion of Ms. Barnes' testimony regarding the type of drivers license shown to her by the person who had cashed the check.

■ The identity of the defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury, upon consideration of all the competent proof. *White v. State,* 533 S.W.2d 735 (Tenn.Cr.App. 1975). Moreover, the weight and credibility of testimony of a witness, and the reconciliation of conflicts in testimony, are matters entrusted exclusively to the jury as the triers of fact. *Withers v. State,* 523 S.W.2d 364 (Tenn.Cr.App.1975).

The appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

WALKER, Judge, and ARTHUR C. FAQUIN, Jr., Special Judge, concur.